# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DENNIS JOSEPH PITTS, | ) |
|     Plaintiff, | ) |
| vs. | ) Case No. 13-cv-652-TLW |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration, | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Dennis Joseph Pitts seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), and Fed. R. Civ. P. 73, the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 11). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor

substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

**BACKGROUND**

Plaintiff, then a forty-five year old male, completed his application for Title II benefits on September 20, 2010. (R. 167-70). Plaintiff alleged a disability onset date of May 15, 2009. (R. 167). Plaintiff claimed that he was unable to work due to "injuries to both knees, hips, shoulders, neck & lower back, [and] depression." (R. 207). Plaintiff's claims for benefits were denied initially on February 8, 2011, and on reconsideration on April 4, 2011. (R. 118, 122-26; 119, 129-31). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on February 13, 2012. (R. 49-101). The ALJ found that plaintiff was unable to perform any of his past relevant work, but that other jobs existed in significant numbers that plaintiff could perform. Therefore, the ALJ issued a decision on April 25, 2012, denying benefits and finding plaintiff not disabled. (R. 30-44). The Appeals Council denied review, and plaintiff appealed. (R. 1-4; Dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff's last insured date was December 31, 2010. The ALJ found that plaintiff had not performed substantial gainful activity between his alleged onset date of May 15, 2009 and his date last insured. (R. 35). At step two, the ALJ found that plaintiff had the severe impairments of "status-post left knee arthroscopy x 2; status post right knee arthroscopy; status-post bilateral carpal tunnel release; status post arthroscopy of the right shoulder; status-post bilateral hip arthroscopy; and degenerative joint disease." Id. After analyzing the "paragraph

B" criteria for mental impairments, the ALJ determined that plaintiff's "medically determinable mental impairment" of depression was non-severe because it caused no more than a minimal limitation in his ability to "perform basic mental work activities." (R. 35-36).

At step three, the ALJ determined that plaintiff's impairments did not meet or equal a listed impairment. (R. 37). After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that, through his date last insured, plaintiff retained the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except he could not climb ladders, ropes, or scaffolds; could not balance at unprotected heights; could not perform overhead reaching with either arm; and needed to alternate sitting and standing.

(R. 37). At step four, the ALJ found that plaintiff was unable to perform any of his past relevant work as a welder, a tool crib attendant, or a gait attendant because each exceeded the sedentary exertional level. (R. 42). At step five, the ALJ found that plaintiff could perform the sedentary jobs of machine operator and production assembler. (R. 43). Because he found that other work existed that plaintiff could perform, the ALJ determined that plaintiff was not disabled between his alleged onset date and his date last insured. (R. 43-44).

## ANALYSIS

On appeal, plaintiff raises four issues: (1) that the ALJ failed to recognize plaintiff's bilateral carpal tunnel syndrome as a severe impairment; (2) that the ALJ failed to recognize plaintiff's depression and anxiety as severe impairments;[1] (3) that the ALJ failed to include all of

---

[1] The Court finds no error in plaintiff's first two issues. At step two, the analysis continues if even one severe impairment is found. Here, the ALJ found that plaintiff had several severe impairments; therefore, the ALJ fulfilled his duty at step two. To the extent that plaintiff argues the ALJ failed to include all of plaintiff's limitations, the Court agrees and that argument is addressed below.

plaintiff's limitations in his RFC; and (4) that the ALJ failed to properly consider plaintiff's credibility. (Dkt. 15 at 2). The Court will address plaintiff's credibility complaints first.

**<u>Credibility</u>**

Plaintiff argues that the ALJ failed to assess properly his credibility by using boilerplate language and by taking evidence out of context. (Dkt. 15 at 8-10). The Commissioner responds that the Court should uphold the ALJ's credibility determination because the ALJ "cited specific reasons and facts in finding [plaintiff] not completely believable." (Dkt. 16 at 8).

This Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ's use of boilerplate language in the credibility determination is not error, because he went on to link his finding to statements in the record. However, plaintiff is correct that the ALJ misstated the evidence to discredit plaintiff, as discussed *infra*.

The ALJ summarized plaintiff's testimony and the medical record, noting instances of inconsistency with plaintiff's claims of disability. The ALJ particularly used this summary to discredit plaintiff's claim of pain in his hands. However, many of the ALJ's examples are taken out of context compared to what plaintiff actually testified and what the evidence of record actually shows.

The ALJ must link his credibility findings to the evidence. See Kepler, 68 F.3d at 291. The ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2004). However, the ALJ is not allowed to "pick and choose" only evidence favorable to his decision. Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).

Here, the ALJ appears to focus his credibility determination on his own assumptions rather than objective medical evidence of plaintiff's hand pain and carpal tunnel syndrome. The ALJ consistently pulled evidence out of context to minimize plaintiff's complaints and show that his hand complaints were not disabling. See (R. 37-42).

For example, the Court lists below some statements from the ALJ's decision compared directly with what is actually in the hearing testimony and the medical records:

> He stated that he leases two acres of land for his four horses, and moved them to the land in a friend's cattle trailer. (R. 38);
>
> > Plaintiff's testimony: "A friend of mine has cattle. He come [sic] over with a trailer and moved them for me." (R. 59).
>
> He stated that he uses a small tractor to haul hay bales to feed [the horses] and feeds them grain once a day. (R. 38);
>
> > Plaintiff's testimony: "I have a small tractor that I haul round bales out there with. It's one of the small compact tractors. I do feed them grain once a day, but it's getting to the point trying to carry the buckets to them to feed them causes me a lot of pain, so I'm in the process of finding homes for them." (R.

60). He further testified that he feeds grain from a small bucket that holds about four pounds of feed. (R. 61). Plaintiff also testified that he leaves the 50 pound feed bags in the bed of his truck, which has a camper shell, after the bags are loaded to it by employees at the feed store. (R. 61).

Mr. Pitts testified that he has a gunsmith license and works on guns for friends. Despite this, however, he also alleges that he cannot work because of problems with his hands, shoulders, neck, and knees. This, of course, is inconsistent with his testimony that he, in fact, works on guns and maintains gunsmith licensure. (R. 38);

> Plaintiff's testimony: "Well, I've got a diploma from where I completed the [online gunsmith] course, but that's all I've got. … I did some work on guns only for friends. … From 2003 until about 2006." (R. 65-66).

He stated that he cannot reach overhead at all, his arm goes numb, and his hands tingle. Mr. Pitts testified that he has severe pain in his hands, has trouble gripping things, and drops things 'constantly.' … Notably, however, Mr. Pitts testified that if he had not been terminated from his job he would still be working. (R. 38-39).

On February 23, 2011, Dr. Chalkin stated that EMG and nerve conduction studies performed on November 22, 2010, were improved since Mr. Pitts's carpal tunnel surgery (Exhibit 23F). (R. 39, 40). This objective evidence shows that Mr. Pitts is more active than alleged with regard to his hands, and these inconsistencies erode his credibility. (R. 40).

> The ALJ correctly summarized plaintiff's testimony regarding his hand pain, but inaccurately summarized Dr. Chalkin's February 23, 2011 record. That record says "The EMG/nerve study that Dr. Jabbour ordered on November 22, 2010 was made available for me. … It shows increased latency in both the right and left median nerves at the wrist with decreased conduction velocities, although it is certainly much improved from his original nerve studies. He clearly has residual effects of carpal tunnel syndrome, which one would expect with nerve studies as severe as his were before we started." Dr. Chalkin went on to recommend that plaintiff receive corticosteroid injections in both wrists to "see if this helps him with the symptoms. I do not believe he is a candidate for repeat carpal tunnel releases due to the severity of his wrist and the natural recovery." (R. 488).

After his bilateral carpal tunnel release surgeries in March 2009, Dr. Chalkin released Mr. Pitts on May 27, 2009 (Exhibit 3F). He did not return until February 19, 2011, **which is after the date he was last insured for disability benefits (or after December 31, 2010.)** (R. 40) (emphasis in original).

6

> Dr. Chalkin did release plaintiff from his care on May 27, 2009, but during that examination, he noted "objective weakness in grip," and "altered sensation with light touch in the median nerve distribution." (R. 340). Further, Dr. Jabbour referred plaintiff for further care and testing on his hands on November 1, 2010. (R. 408). Plaintiff received testing in 2010, prior to his date last insured, but was not seen by Dr. Chalkin again until the February 23, 2011 date discussed above. (R. 488).

> On September 15, 2010, Mr. Pitts stated that his fiancé took care of their pets; that he did no housework or yard work; did go outside; still drove a car, and shopped once a week. He also stated that he went hunting and fishing during the season, rode horses 2-3 days a week, watched television, ran errands occasionally, and went to the grocery store and post office. (R. 40).

> This is taken from plaintiff's September 15, 2010 Function Report. The mention of hunting and fishing and riding horses 2-3 days a week is found at R. 192 where plaintiff was asked about hobbies and interests. The next question on the form directs plaintiff to "[d]escribe any changes in these activities since the illnesses, injuries, or conditions began." Plaintiff stated here that he "cannot ride horses at all, or hunt and fish without assistance, and my hands won't allow me to work on guns." (R. 192).

In addition, plaintiff completed a "Disability Report – Appeals" form on February 16, 2011, detailing increased hand, neck, hip, and arm pain and decreased functional ability. Plaintiff noted that the changes occurred in 2010. (R. 232). The ALJ did not discuss any of this information.

The ALJ appears to have used only selective portions of the record, especially regarding plaintiff's hands, ignoring those portions that did not support his credibility determination. Doing so is error. See Sisco, 10 F.3d at 743 (an ALJ may not take "testimony out of context and selectively acknowledge[] parts of [a claimant's] statements while leaving important segments out."). Accordingly, the Court finds that the issue of credibility must be remanded to the ALJ for a proper analysis.

**Residual Functional Capacity**

If, on remand, the ALJ alters his credibility finding, the RFC assessment may also require reconsideration.

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding plaintiff not disabled is **REVERSED and REMANDED** for further proceedings. Specifically, the ALJ should reevaluate plaintiff's credibility in light of the entire record and reconsider any other aspects of the Decision as appropriate.

SO ORDERED this 27th day of February, 2015.

_____
T. Lane Wilson
United States Magistrate Judge